## COMMONWEALTH *vs.* FEDERICO LOPERA.

No. 95-P-1488.

Middlesex. November 13, 1996. - January 30, 1997.

Present: SMITH, IRELAND, & LENK, JJ.

*Evidence,* Hearsay, Declaration against interest.

At the trial of a criminal complaint alleging the defendant violated G. L. c. 272, § 24, the record did not support the judge's finding that the Commonwealth made a good faith effort to obtain a certain witness's attendance at trial so as to establish the witness's unavailability [135-137]; furthermore, certain statements of that witness, which the Commonwealth offered based on the witness's alleged unavailability, were erroneously admitted in evidence, where the declarations were not sufficiently against the witness's penal interest [137].

At a criminal trial, certain out of court statements were not properly admissible to show the "nature" or "character" of a certain apartment alleged to be "resorted to for prostitution and lewdness" in violation of G. L. c. 272, § 24, where the circumstances in which the statements were made did not demonstrate the declarant's "patent absence of motive to falsify": as the statements were admitted in evidence and were prejudicial, the defendant was entitled to a new trial. [137-139]

COMPLAINT received and sworn to in the Somerville Division of the District Court Department on January 3, 1995.

On transfer to the jury session of the Cambridge Division, the case was tried before *Mark S. Coven, J.*

*Mark W. Shea* for the defendant.

*Peter Schlossman,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On December 30, 1994, the defendant, Federico Lopera, was arrested inside an apartment at 51 Broadway in Somerville. He was charged in a complaint with keeping "a house of ill fame which is resorted to for prostitution or lewdness." G. L. c. 272, § 24.

At the trial, three police officers testified for the Com-

monwealth. They testified that on the evening of December 30, 1994, they were driving by 51 Broadway when they saw some men walking out of an alley behind that address. Two of the officers left their vehicle and walked to the rear entrance of 51 Broadway where they heard someone "pushing at the door and someone screaming." The door "flung open" and three people tried to leave through the doorway. When the door opened, they heard a woman screaming and a loud banging noise inside the house. The officers entered the apartment and saw the defendant sitting in the kitchen with some other people. The officers testified that they had been to 51 Broadway on at least three other occasions to investigate reports of prostitution taking place there, and that each time the defendant was in the kitchen.

The officers entered a small room adjacent to the kitchen and found Marisa Gonzalez (who was naked) engaged in sexual intercourse with a man. The room contained only a mattress, new and used condoms, lubricating jellies and baby wipes. An officer testified that other rooms in the apartment were set up in a similar fashion. Gonzalez was told to get dressed and was arrested along with the individual with whom she had been engaged in sexual intercourse.[1] The defendant told the officers that he lived across the street but rented the apartment at 51 Broadway.

1. *Admission in evidence of certain statements of Gonzalez.* At the time of her arrest, Gonzalez told the officers that she had been working as a prostitute for several months and that she worked a "shift" inside the apartment. She stated that she charged $25 for sex and that she gave $13 of that amount to the defendant, whom she identified by name. She also stated that the defendant "kept" the apartment.

The defendant's trial was scheduled for May 5, 1995. Gonzalez was summoned by the Commonwealth to appear as a witness. She did not appear (the summons was not returned) and the case was continued to June 8, 1995. The Commonwealth did not summon her to appear on that date and she did not appear.

Prior to the commencement of the trial on June 8, 1995, the Commonwealth notified the judge that although Gonzalez

---

[1]Gonzalez was charged with prostitution. Some time prior to the defendant's trial she admitted to sufficient facts and her case was continued without a finding.

had not appeared, it wanted to introduce her statements at the trial. The defendant argued, however, that Gonzalez's statements that she was a prostitute who worked a "shift" in the apartment and that she gave part of the fee she received for sexual intercourse to the defendant who "kept" the apartment, were not admissible because the statements were hearsay.

The judge agreed that the statements were hearsay but ruled that they were admissible under a recognized exception to the hearsay rule — declarations against penal interest. See *Commonwealth* v. *Carr*, 373 Mass. 617, 623 (1977), where the court adopted in substance the principles expressed in rule 804(b)(3) of the Federal Rules of Evidence (1975), governing the admissibility of statements against interest. Over objection, Gonzalez's statements were introduced in evidence during the defendant's trial and the defendant was found guilty by a six-person jury. On appeal, the defendant argues that Gonzalez's statements did not qualify as declarations against penal interest because the Commonwealth failed to meet its burden of showing that Gonzalez was "unavailable" to be a witness at the defendant's trial and that, in any event, portions of her statements were not declarations against her penal interest.[2]

A statement is admissible as a declaration against penal interest if it meets three tests: "[1] [T]he declarant's testimony must be unavailable; [2] the statement must so far tend to subject the declarant to criminal liability 'that a reasonable man in his position would not have made the statement unless he believed it to be true'; and [3] the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness." *Commonwealth* v. *Drew*, 397 Mass. 65, 73 (1986), quoting from

---

[2]The defendant also argues that because Gonzalez's statements were offered by the Commonwealth as evidence of the defendant's guilt, their admission violated the defendant's Federal and State constitutional rights to confront witnesses. See *Commonwealth* v. *Bohannon*, 385 Mass. 733, 741 (1982)("the confrontation right extends beyond the contours of the hearsay rule"). Because we hold that Gonzalez's statements were improperly admitted in evidence as declarations against her penal interest, we do not consider the defendant's claim that his confrontation rights were violated. However, in order to avoid any conflict with the defendant's confrontation rights, we borrow the analysis used in the confrontation cases with regard to the unavailability of a witness.

*United States* v. *Thomas,* 571 F.2d 285, 288 (5th Cir. 1978). Therefore, we must first address the question whether the judge committed error when he ruled that the Commonwealth met its burden of showing that Gonzalez was unavailable. *Commonwealth* v. *Bohannon,* 385 Mass. 733, 742 (1982) (when Commonwealth intends to introduce prior testimony of an absent witness, it " 'bears the burden of establishing' an adequate showing of the 'unavailability' of a witness at the time of the trial") (quoting from *Ohio* v. *Roberts,* 448 U.S. 56, 75 [1980]). "Whether the Commonwealth carries its burden on the question of sufficient diligence in attempting to obtain the attendance of the desired witness depends upon what is a reasonable effort in light of the peculiar facts of the case." *Commonwealth* v. *Hunt,* 38 Mass. App. Ct. 291, 295 (1995). See *Commonwealth* v. *Childs,* 413 Mass. 252, 260-261 (1992). Here, the record shows that the Commonwealth did not meet its burden.

The judge based his conclusion that Gonzalez was unavailable to testify on the following facts: 1) "[t]he trial had been continued from an earlier date because of the Commonwealth's inability to produce the witnesses," including Gonzalez; 2) "[d]espite being summonsed, and the summons not having been returned in the mail, [Gonzalez] failed to appear at either of the two trial dates"; 3) "[t]he Commonwealth reported that neither the office of the district attorney nor the Somerville Police could find [Gonzalez]"; and 4) "[e]ven if [Gonzalez] did appear for trial it is likely that she would have been appointed counsel and may well have invoked her privilege against self-incrimination, thus making her unavailable for purposes of testifying at the" defendant's trial. The evidence does not support the judge's findings.

Although the Commonwealth summoned Gonzalez to appear on the first trial date, May 5th, the Commonwealth did not summon Gonzalez to appear on June 8th, the new trial date. The prosecutor represented to the judge that neither the police nor the district attorney's office could locate Gonzalez, but he did not describe the steps taken by the police or the district attorney's office to attempt to locate Gonzalez between May 5th and June 8th. Contrast *Commonwealth* v. *Childs,* 413 Mass. at 260-262, where the court held that the steps taken by the police and prosecution as shown by the evidence and representations made to the judge, constituted a

good faith, diligent, reasonable search. Here, apparently the only step taken by the Commonwealth was to send one summons to Gonzalez to appear on a trial date which turned out not to be the actual date of the trial. We hold that the record does not support the judge's finding that the Commonwealth made a good faith effort to obtain Gonzalez's appearance at the June 8th trial.[3]

Further, even if the Commonwealth had been able to sufficiently establish Gonzalez's unavailability, it would still have been error to allow the officer to testify that she told him that she gave the defendant a portion of her fee and that "the defendant kept the apartment" because those statements are not sufficiently against Gonzalez's penal interest. See *Williamson* v. *United States*, 114 S. Ct. 2431, 2435 (1994) (Fed. R.Evid. 804[b][3] does not allow admission of statements which are not directly against the declarant's penal interest even when they are made in a broader narrative that is generally against the declarant's penal interest).

2. *Admissibility of Gonzalez's statements because they show "nature" or "character" of the apartment.* The Commonwealth contends that even if Gonzalez's statements were improperly admitted as declarations against her penal interest, the statements were admissible on another ground. It relies on a line of decisions that hold that certain out-of-court statements are admissible to show the "nature" or "character" of a place or thing. According to the Commonwealth, Gonzalez's statements were admissible because they demonstrated the "nature" and "character" of the apartment, i.e., a place "resorted to for prostitution or lewdness."[4]

It has been observed that "[a] difficult group of cases is

---

[3]We reject the judge's finding that Gonzalez was "unavailable" because if she appeared at trial, she "may well have invoked her privilege against self-incrimination." We recognize that if a witness at trial invokes his or her privilege, the witness could be deemed to be "unavailable." See *Commonwealth* v. *Koonce*, 418 Mass. 367, 378 n.6 (1994). However, judges should not be quick off the mark in presuming that an absent witness may invoke his or her privilege against self-incrimination. See *Commonwealth* v. *Phetsaya*, 40 Mass. App. Ct. 293, 301 (1996). The possibility that an absent witness may exercise his or her privilege is not the same as a witness actually exercising the privilege.

[4]Examples of decisions that allow in evidence conversations to prove the "nature" and "character" of a place or thing include: *Commonwealth* v. *Jensky*, 318 Mass. 350, 352-354 (1945), and *Commonwealth* v. *Massod*, 350 Mass. 745, 747-748 (1966). In those cases, the defendants were charged

that in which extrajudicial conversations are admitted in evidence to prove the nature of a place or thing associated with the conversation. . . . Such extrajudicial declarations are treated as nonhearsay in spite of the fact that the implications of the declarations must be believed for the declarations to have probative value. It should be noted that in such cases there is a patent absence of motive to falsify on the part of the declarant and that there is a large volume of independent items of evidence that can be consistent with one another only if the hypothesis is true." Liacos, Massachusetts Evidence § 8.2.3 (6th ed. 1994). In those cases, the declarant's "patent absence of motive to falsify" is evident because the person calling on the telephone or beeper is doing so in furtherance of alleged criminal activity and is unaware that he or she is speaking with a police officer.

The Commonwealth cites *Commonwealth* v. *Bagdasarian*, 257 Mass. 248 (1926), in support of its argument. In that very short opinion, the court held that the trial judge properly allowed a police officer to testify, over objection, that while working undercover he had a conversation with a woman at the defendant's home "which tended to show that the woman was a prostitute on the premises under hire of the defendant, to whom she paid a part of the money she received from men resorting there." *Id.* at 248. The court ruled that, "[i]f properly admitted upon any ground, the evidence could be used for any purpose, unless it was expressly limited by the court." *Id.* at 249.

There are two critical factors that distinguish *Bagdasarian* from this matter. First, according to the original record in *Bagdasarian*, the woman in that case testified at the trial and her testimony was identical to the testimony of the police officer who later testified in that case. In the present case, Gonzalez did not testify at the trial.

with being persons found in a room "with apparatus for registering bets." In both cases, the telephone at the defendant's location was answered by the police, and the contents of the telephone calls were received in evidence because the conversations were "highly cogent first hand information as to the actual use of the telephone equipment." *Commonwealth* v. *Massod*, 350 Mass. at 748. See *Commonwealth* v. *Washington*, 39 Mass. App. Ct. 195, 200-201 (1995) (the defendant was convicted of trafficking in cocaine; on appeal, this court held that testimony of a police officer as to conversations he had with persons who had called the defendant's beeper seeking to purchase drugs were admissible; conversations had indicia of reliability and showed actual use of beeper for drug transactions).

Second, in *Bagdasarian*, the woman was not aware that she was talking to a police officer. Here, Gonzalez's statements were made to an individual who she knew was a police officer, thereby calling into question whether there was, in the circumstances, a "patent absence of motive to falsify on the part of the declarant." Liacos, Massachusetts Evidence § 8.2.3. Therefore, *Bagdasarian* does not control in this matter.[5] We hold that in the circumstances pertaining here, none of Gonzalez's statements were admissible to show the "nature" and "character" of the apartment. Because of the prejudicial nature of the statements, there must be a new trial.[6]

The judgment is reversed, the verdict is set aside, and the matter is remanded to the District Court for a retrial.

*So ordered.*

---

[5]A review of the record in the present case demonstrates that the Commonwealth offered Gonzalez's statements as evidence of the truth of the matters asserted in the statements, i.e., that the defendant "kept" the apartment as a house of ill fame, *not* as evidence showing the "nature" or "character" of the apartment.

[6]The defendant argues that without Gonzalez's statements, the Commonwealth did not present sufficient evidence to withstand a motion for a required finding of not guilty and, therefore, there is no need for a new trial. We disagree and hold that there was sufficient evidence. There was evidence that on three prior occasions when the police were investigating claims of prostitution, the defendant was present in the apartment. The defendant admitted that he rented the apartment although he lived across the street. The lack of furniture and the presence of used and unused condoms, lubricating jellies, and baby wipes in some of the rooms, as well as the defendant's proximity to the location where Gonzalez was engaged in sexual intercourse, all provided sufficient evidence to withstand the defendant's motion for a required finding of not guilty. We also note that double jeopardy principles do not bar a retrial. *Commonwealth* v. *Kirk*, 39 Mass. App. Ct. 225, 233 (1995).