COMMONWEALTH *vs.* JEAN W. CHARLES.

Middlesex. December 7, 1998. - January 15, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Confrontation of witnesses, Self-incrimination. *Evidence,*
Hearsay, Declaration against interest, Previous testimony of unavailable
witness. *Witness,* Unavailability. *Practice, Criminal,* Agreement between
prosecutor and witness, Plea, Required finding, Duplicative convictions.
*Joint Enterprise. Fraud. Larceny. Motor Vehicle,* Insurance. *Insurance,*
Fraud and concealment, Motor vehicle insurance, Defrauding insurer.

At the trial of indictments charging motor vehicle insurance fraud and larceny
over $250, the judge did not err in admitting certain extrajudicial state-
ments of a fugitive (unavailable) witness, an indicted coventurer in the
scheme, where the statements were demonstrated to be against the witness's
penal interest, were crucial to establishing the existence of the insurance
fraud scheme, and were not sufficiently inculpatory of the defendant to of-
fend the defendant's Sixth Amendment rights, and where the judge im-
mediately gave the jury limiting instructions on their use of the evidence.
[676-680]

At the trial of indictments, the judge did not err in admitting in evidence por-
tions of a witness's plea agreement or in allowing the Commonwealth to
examine the witness regarding the agreement. [680-681]

Evidence at the trial of indictments, including reasonable inferences therefrom,
was sufficient to establish the defendant's guilt on a theory of joint venture.
[681-682]

Convictions and sentences for motor vehicle insurance fraud and larceny over
$250 were not duplicative. [682-683]

INDICTMENTS found and returned in the Superior Court Depart-
ment on July 2, 1992.

The cases were tried before *Margaret R. Hinkle,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Maxine Sushelsky* for the defendant.

*Lee Hettinger,* Assistant Attorney General, for the Com-
monwealth.

GREANEY, J. The defendant was convicted by a jury on four
indictments charging motor vehicle insurance fraud (two indict-

ments), G. L. c. 266, § 111B, and larceny over $250 (two indictments), G. L. c. 266, § 30. The defendant's primary claim on appeal is that the judge erred in admitting statements of an absent witness, a coventurer in the crimes charged against the defendant, as a "declaration against penal interest." We transferred the appeal to this court on our own motion and now affirm the convictions.

1. The Commonwealth presented the following evidence. In September, 1991, the defendant approached Clodel Louis, a coworker, and offered to include him in an automobile accident report, and in the making of a fraudulent insurance claim based on that accident, in exchange for $200. Louis agreed, and paid the defendant.

On October 25, 1991, at 6 A.M., the defendant made a telephone call to Louis and told him that the accident had taken place. The defendant directed Louis to telephone his employer and explain that he had been in an automobile accident and he would not be coming to work. He also told Louis that he would telephone again later that day, and would provide Louis with a copy of the accident report so that Louis could obtain medical treatment for the alleged injuries he sustained in the "accident."

The defendant telephoned Louis again that afternoon. He told Louis that his wife had his car, and instructed Louis to pick him up at home and drive him to a hospital. On the way to the hospital, the defendant explained to Louis the details of the accident, in particular that the defendant's car had been struck from the rear, that the defendant and his sister had been in the front seat, and that Louis had been in the back seat. The defendant instructed Louis to claim that he had a lower back injury.

Hospital medical records introduced in evidence indicate that the account of the accident told by Louis to hospital emergency room personnel was consistent with that suggested by the defendant. The defendant instructed Louis to wait one or two weeks and then to make an appointment with a chiropractor.

Louis testified that he told hospital personnel that he was injured, and he filed a false insurance claim, in order to obtain money from any insurance settlement resulting from the fraudulent motor vehicle accident. He further testified that the accident had not occurred, and that he had lied to hospital personnel, his chiropractor, and his lawyer.

Louis testified pursuant to a written plea agreement with the

office of the Attorney General. A redacted version of the agreement was introduced in evidence during the prosecutor's redirect examination. Louis testified that he understood that the agreement required him to testify truthfully and to be available when needed. Louis also confirmed that he had been charged with two counts of larceny and two counts of insurance fraud and that, in exchange for his cooperation, he would be placed on pretrial probation for those charges.

The defendant's automobile was insured with Safety Insurance Company (Safety). On October 25, 1991, the defendant signed an operator's report of motor vehicle accident which stated that, on October 25, 1991, at 6:45 A.M., while operating his car, he was in a collision with a car owned and operated by Odolphe Julien at the corner of Corbett Street and Hopkins Street in the Mattapan section of Boston. The defendant described how the accident occurred, and the damage sustained by his car and Julien's car. The defendant included two passengers in his report as being injured, one being Louis. The defendant submitted to his insurance agent a signed automobile loss notice form regarding the accident. Information included on the form was consistent with that provided by the defendant on the accident report, including Julien's motor vehicle and insurance information. Both forms were relied on by Safety in deciding to make certain payments on the claims.

Louis submitted to Safety an application for benefits in which he described the accident consistent with the defendant's account, claimed that he was injured as a result, and incurred medical bills relating to those injuries. The defendant and Louis each obtained approximately $2,000 from Safety as a result of their medical claims.

Julien submitted an automobile loss notice form to his insurer, United States Fidelity & Guaranty Company (USF&G). USF&G also received the defendant's accident report and loss notice form concerning the accident. USF&G paid Julien approximately $500 for the damage to his car, which it determined to be a total loss, and $350 to a salvage company.

Tito Medeiros testified that he was an investigator for the Massachusetts insurance fraud bureau. In May, 1992, he reviewed files from USF&G regarding the October 25, 1991, accident. Medeiros, along with Elizabeth Poleet, a special agent with the immigration service, interviewed Julien at his home. At the beginning of the interview, Julien told Medeiros that

he had been involved in an accident, although he could not recall the date of the accident. Julien left the room and returned with a copy of the operator's accident report dated October 25, 1991. On further questioning by Medeiros, Julien stated that no accident had occurred. He further stated that he had played the roles of two different individuals in the alleged collision, that of the operator of the second vehicle and the injured passenger in that vehicle.

Two claims adjustors, one from the USF&G, and one from Safety, testified that they had reviewed the claims from the accident, concluded that they were legitimate, and thus paid the claims.

2. Prior to Medeiros's testimony regarding his conversation with Julien, the judge excused the jury and conducted a voir dire. Medeiros testified that at the beginning of the interview, Julien told him that he had been in an accident. He further stated that he had not been injured, but his two passengers were injured. Julien was unable to describe the other vehicle involved in the accident, and he could not recall how many people were in the other car. After Medeiros told Julien that he had received certain information in an anonymous letter (Medeiros did not testify as to what that information was), Julien admitted that there had not been an accident, and that he had played the role of the alleged operator of the car, as well as one of the injured passengers. Julien, who did not have proper immigration documents, agreed to cooperate with the investigation, and made an appointment to meet with Medeiros at a later time. Julien failed to keep the appointment, was subsequently indicted and defaulted on charges stemming from the alleged accident, and was then listed as a "wanted fugitive."

Following the voir dire, the judge ruled that Julien's statements were admissible as statements against penal interest. She informed counsel that she would only allow admission of certain statements. In this regard, the judge stated: "Given [the] voir dire, the Commonwealth is permitted to elicit from this witness two things . . . . First, he says there's an accident. Secondly, he says there's not an accident. . . . You need to insure that your questions are sufficiently narrowly drawn that you don't draw him into talking about [the defendant's knowledge of the scheme]." She indicated that she would instruct the jury to consider Julien's statements only with respect to whether a scheme existed, not with respect to whether the defendant was a

knowing participant in the scheme. The judge also ruled that testimony referring to Julien's fugitive status was sufficient to establish his unavailability. Defense counsel objected to the judge's rulings.

Following Medeiros's trial testimony, to which defense counsel also objected, the judge immediately instructed the jury: "[Y]ou are to consider [Medeiros's testimony as to Julien's statement] only with [respect to] whether or not there was a scheme to defraud the insurance company. You are not to consider that answer with regard to whether the defendant . . . was a knowing and [wilful] participant in that scheme."

The defendant argues that admission of Julien's extrajudicial statement violated the defendant's due process and confrontation rights, and that the judge's limiting instruction was improper because it inculpated the defendant. We reject these arguments.

We have said that, "[w]here a nontestifying codefendant's statement ' "expressly implicate[s]" ' the defendant, leaving no doubt that it would be "powerfully incriminating," ' the confrontation clause of the Sixth Amendment [to the United States Constitution] has been offended, notwithstanding the judge's instructions to consider the statement only against the codefendant. *Commonwealth* v. *James*, 424 Mass. 770, 782 (1997), quoting *Richardson* v. *Marsh*, 481 U.S. 200, 208 (1987)." *Commonwealth* v. *Blake*, *ante* 57, 60 (1998). See *Bruton* v. *United States*, 391 U.S. 123, 124 n.1 (1968). A "statement which becomes incriminating 'only when linked with evidence introduced later at trial,' however, generally does not offend the Sixth Amendment, so long as an adequate limiting instruction is given." *Commonwealth* v. *Blake*, *supra*, quoting *Richardson* v. *Marsh*, *supra*. See *Commonwealth* v. *Keevan*, 400 Mass. 557, 570 (1987).

We conclude that the statements were not sufficiently inculpatory to offend the defendant's Sixth Amendment rights. The statements neither refer to the defendant, nor expressly associate him with the alleged insurance fraud scheme. The judge was acutely aware of the defendant's concerns with admission of the statements, particularly in light of the Commonwealth's theory that the defendant and Julien jointly committed the crimes charged in the indictments. At the same time, she recognized that the statements were crucial to establishing the existence of the insurance fraud scheme. On considering its admission, the

judge cautioned the Commonwealth that only that part of the testimony which came within "the narrow declaration against penal interest" would be admitted. Thereafter, she carefully and appropriately instructed the jury in very strong terms to consider the evidence of Julien's statement only with respect to whether a scheme existed, and not as to whether the defendant was a knowing or wilful participant in that scheme. We are satisfied that there was no violation of the defendant's confrontation or due process rights.

The defendant further argues that Julien's statements were not sufficiently against his penal interest so as to qualify under that exception to the hearsay rule. In addition, he argues that the Commonwealth failed to meet its burden of showing that Julien was "unavailable" to be a witness at the defendant's trial, and that the statements were not properly corroborated as required by the exception. We disagree.

In *Commonwealth* v. *Drew*, 397 Mass. 65, 73-78 (1986), we reviewed the requirements for admissibility of statements against penal interest.[1] A statement is admissible under the penal interest exception if (1) the declarant's testimony is unavailable; (2) the statement so far tends to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement, if offered to exculpate the accused, is corroborated by circumstances clearly indicating its trustworthiness. *Id.* at 73. The court must determine that the statements are truly against the penal interest of the declarant before allowing admission. *Commonwealth* v. *Carr*, 373 Mass. 617, 623-624 (1977). See *Williamson* v. *United States*, 512 U.S. 594, 599-600 (1994) (Fed. R. Evid. 804[b][3] does not allow

---

[1] In *Commonwealth* v. *Carr*, 373 Mass. 617, 623 (1977), we embraced, in substance, the principles expressed in Rule 804(b)(3) of the Federal Rules of Evidence (1985), governing the admissibility of statements against interest. See Proposed Mass. R. Evid. 804 (b) (3). Rule 804 (b) (3) provides: "(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

admission of statements which are not directly against declarant's penal interest).

The Commonwealth carries the burden on establishing the unavailability of a witness at the time of trial, *Commonwealth* v. *Bohannon*, 385 Mass. 733, 742 (1982), and whether the Commonwealth was sufficiently diligent in attempting to obtain the witness's attendance depends on the particular facts of the case. See *Commonwealth* v. *Childs*, 413 Mass. 252, 260-261 (1992). "[T]he lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *Id.* at 261, quoting *Ohio* v. *Roberts*, 448 U.S. 56, 74 (1980). The judge based her conclusion that Julien was unavailable on Medeiros's uncontested voir dire testimony that at the time of trial Julien was a fugitive.

The Commonwealth makes a reasonable argument that, because Julien refused to appear in court pursuant to formal process notifying him of criminal indictments and became a fugitive, he would likely not respond to additional attempts to procure his appearance at the defendant's trial, and, consequently, the judge acted within her discretion in determining that he was unavailable. We accept as a basis of unavailability the principles expressed in Rule 804(a)(5) of the Federal Rules of Evidence (1985). Rule 804(a)(5) provides that a witness is unavailable if the witness "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." Where the prosecutor's efforts would be futile, and result in a "great improbability" of successfully procuring the witness, the witness is essentially unavailable. See *Ohio* v. *Roberts*, *supra* at 76. That Julien was a fugitive could justify his unavailability for purposes of the exception. See *United States* v. *Sandoval-Curiel*, 50 F.3d 1389, 1392 (7th Cir. 1995) (evidence that declarant was fugitive satisfied unavailability requirement).

Any doubt of the sufficiency of the showing of unavailability in this case is resolved in the Commonwealth's favor, because the conclusion that Julien's testimony was unavailable is virtually unavoidable for another reason. It is obvious that had Julien been present to testify, he inevitably would have invoked his right under the Fifth Amendment to the United States Constitution not to incriminate himself. See *Commonwealth* v. *Drew*, 397 Mass. 65, 73 (1986). See also *Commonwealth* v. *Galloway*,

404 Mass. 204, 208 (1989) (witness's claim of privilege against self-incrimination makes witness unavailable). As a general matter, it should not be presumed that an absent witness may invoke his or her privilege against self-incrimination. See *Commonwealth* v. *Lopera*, 42 Mass. App. Ct. 133, 136 n.3 (1997). Here, however, Julien was a codefendant and joint venturer in the crimes charged against the defendant, and the statements he made to Medeiros directly implicated him in the insurance fraud scheme. In such circumstances, we conclude that the unavailability requirement of the exception has been satisfied.

Furthermore, Julien's statement also satisfies the second test for admissibility as a statement against penal interest, as it clearly tended to subject him to criminal liability such "that a reasonable man in his position would not have made the statement unless he believed it to be true." Julien's statement need not have been a "direct admission of guilt," *Commonwealth* v. *Drew*, *supra* at 74, quoting *Commonwealth* v. *Keizer*, 377 Mass. 264, 270 (1979), because the rule includes a "disserving statement[] by a declarant that would have probative value in a trial against the declarant." See *Commonwealth* v. *Drew*, *supra*, quoting *United States* v. *Thomas*, 571 F.2d 285, 288 (5th Cir. 1978). Julien surely would have understood that he would be inculpated in the insurance fraud scheme by his admission that the accident had not in fact occurred. This admission, coupled with his earlier statements supporting the existence of the accident and his involvement therein so far tended to subject him to potential punishment that a reasonable person in the same position would not make any such statement without believing it to be true.

Finally, we conclude that the statement was properly corroborated and thus meets the third test for admissibility under the exception.[2] In applying "the corroboration requirement, judges are obliged to exercise a discriminating judgment," *Commonwealth* v. *Carr*, 373 Mass. 617, 624 (1977), and in evaluating whether a statement is adequately corroborated, a court

---

[2]We have not had occasion to pass on whether corroboration is required when the Commonwealth seeks to introduce a statement against penal interest made by an unavailable declarant which would inculpate the defendant. Although corroboration does not appear to be required in these circumstances, we agree with those courts and commentators which have concluded that it should be required. See *Commonwealth* v. *Pope*, 397 Mass. 275, 280-281 (1986), and cases cited.

should "not be stringent." *Commonwealth* v. *Drew*, 397 Mass. 65, 75 n.10 (1986). "If the issue of sufficiency of . . . corroboration is close, the judge should favor admitting the statement," and rely on "the good sense of the jury [to] correct any prejudicial impact." *Id.* See P.J. Liacos, Massachusetts Evidence § 8.10, at 482 (6th ed. 1994).[3] "The question is 'not whether the [trial] judge is satisfied that the statement is actually true . . .' but whether, in light of the other evidence already adduced or to be adduced, there is some reasonable likelihood that the statement could be true." *Commonwealth* v. *Drew, supra* at 75-76, quoting *United States* v. *MacDonald*, 688 F.2d 224, 234 n.2 (4th Cir. 1982) (Murnaghan, J., concurring), cert. denied, 459 U.S. 1103 (1983).

Julien's statement was independent of, and consistent with, Louis's statement that the accident never occurred. Additional evidence, including the defendant's accident report, his automobile loss notice form, and Louis's application for insurance benefits from Safety, corroborated Julien's statement, as brought out during the voir dire of Medeiros, that he played both the operator and the passenger who were allegedly in the second car. Based on the independent evidence produced at trial, Julien's statement was sufficiently corroborated, and there was a "reasonable likelihood that [his] statement could be true." *Commonwealth* v. *Drew, supra* at 76.

3. The defendant raises a number of other issues, including that the judge erred in admitting certain portions of a cooperating witness's testimony and plea agreement, and in denying his motions for a required finding of not guilty. He also argues that his convictions and sentences for both motor vehicle insurance fraud and larceny are duplicative, and therefore violate double jeopardy principles. We are not persuaded by these arguments.

(a) The defendant argues that the judge erred in admitting portions of Louis's plea agreement and testimony because the plea agreement contained prejudicial statements, and in combination with Louis's testimony, constituted impermissible prosecutorial vouching. Our review of the record indicates that the prosecution's use of the agreement complied with *Commonwealth* v. *Ciampa*, 406 Mass. 257, 264-265 (1989). See

---

[3]In *Commonwealth* v. *Pope, supra* at 280 n.7, we noted that "[t]he corroboration requirement for inculpatory statements should not be applied with such leniency that the defendant's confrontation rights are violated." There is no violation of those rights here.

*Commonwealth* v. *Martinez*, 425 Mass. 382, 398-399 (1997). In particular, the Commonwealth properly elicited from Louis the fact that he had entered into a plea agreement and that he generally understood his obligations under it, and the prosecutor waited until his redirect examination to enter a redacted version of the agreement in evidence. *Commonwealth* v. *Ciampa, supra* at 262, 264. Prior to admitting the agreement, or allowing the Commonwealth to examine Louis regarding its contents, the judge expressly cautioned the Commonwealth about impermissible vouching, at the same time noting that defense counsel during cross-examination had placed in question whether the agreement obligated Louis to testify truthfully.[4] Furthermore, although the Commonwealth sought to read the redacted version of the agreement during his redirect, see *id.*, the judge precluded the Commonwealth from doing so.[5] The judge did not err in her handling of Louis's plea agreement and testimony.

(b) The defendant claims that the judge erred in denying his motions for a required finding of not guilty on the indictments charging him with filing a false insurance claim and larceny against USF&G because the evidence was insufficient to support a joint venture between the defendant and Julien on those charges. We are not persuaded by this argument.

The standard for reviewing the denial of a motion for a required finding of not guilty is "whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.' " *Commonwealth* v. *Stewart*, 411 Mass. 345, 349-350 (1991), quoting *Commonwealth* v. *Clary*, 388 Mass. 583, 588-589 (1983).

The Commonwealth's theory in this case was that the defendant and Julien undertook a joint venture to defraud both the defendant's and Julien's insurance companies and

[4]During his cross-examination of Louis, defense counsel had asked Louis a series of questions regarding his obligations under the plea agreement, to which Louis essentially responded that the agreement provided that he would not be prosecuted if he "cooperate[d] by telling the truth."

[5]We also agree with the judge's determination that the redacted plea agreement did not constitute improper bolstering although it included four references to Louis's obligation to testify truthfully.

thereby commit a larceny. "A joint venturer, is 'one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime.'" *Commonwealth* v. *Stewart, supra* at 350, quoting *Commonwealth* v. *Soares,* 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). "A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial. . . . The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable . . . ." *Commonwealth* v. *Stewart, supra,* quoting *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980).

Applying these principles to this case, we conclude that the evidence presented by the Commonwealth was sufficient to establish that the defendant committed insurance fraud and larceny against both Safety and USF&G with the assistance and participation of Julien.[6] Accordingly, the judge properly denied the motions.[7]

(c) We discern no merit in the defendant's contention that his

---

[6] We reject the defendant's argument that to prove the defendant committed larceny by false pretenses against USF&G, the Commonwealth was required to show that the defendant was present at the scene of Julien's crime (i.e., his submission of a fraudulent insurance claim). The nature of the crime does not lend itself to such proof.

[7] The defendant also contends that the judge gave the jury an erroneous joint venture instruction to which he objected. He claims that the judge erroneously instructed that the Commonwealth was required to prove either that the defendant acted in commission of the crime or that he shared the mental state for the crime, thereby reducing the Commonwealth's burden of proof on the defendant's requisite mental state. However, the defendant fails to include the entire instruction in which the judge correctly states that "[a] joint venture exists where a person aids, commands, counsels, or encourages the commission of a crime while sharing with the principal the mental state required for the crime." At the conclusion of the bench conference subsequent to the judge's charge, a number of issues were discussed, and defense counsel did raise the objection discussed above. In proceeding to address other concerns raised, the judge inadvertently did not address the claims raised here. However, at the conclusion of the conference, she asked, "Now, is there anything that I've not disposed of?" Defense counsel raised an additional concern that was resolved in his favor, but did not raise the specific concern raised here. In any event, in resolving this additional concern, the judge stressed to the jury that in order to find that the defendant acted as a joint venturer they must conclude that he "entered into an agreement or meeting of the minds with one other co-venturer." In light of the record on this issue, we conclude there was no error.

convictions and sentences for both motor vehicle insurance fraud and larceny are duplicative, and therefore violate double jeopardy and due process principles. "Where the same act [or transaction] constitutes a violation of two distinct statutory provisions, 'the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " *Commissioner of Revenue* v. *Mullins, ante* 406, 416 (1998), quoting *Blockburger* v. *United States,* 284 U.S. 299, 304 (1932). See *United States* v. *Dixon,* 509 U.S. 688, 696 (1993). Contrary to the defendant's contention, the offenses are not "so closely related in fact as to constitute in substance but a single crime." Cf. *Commonwealth* v. *Walker,* 426 Mass. 301, 304 (1997); *Commonwealth* v. *Sanchez,* 405 Mass. 369, 381 (1989); *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 662-663 (1979). Each crime requires proof of elements that the other does not.[8] In particular, unlike larceny by false pretenses, motor vehicle insurance fraud requires neither reliance nor a deprivation of property, and, unlike motor vehicle insurance fraud, larceny by false pretenses does not require a material misrepresentation to an insurer in connection with a motor vehicle insurance claim. In addition, to establish the larceny claim, the Commonwealth was required to prove that the property of the insurer at issue was over $250. Compare G. L. c. 266, § 111B, with G. L. c. 266, § 30.[9]

*Judgments affirmed.*

---

[8]Motor vehicle insurance fraud, G. L. c. 266, § 111B, requires that (1) the defendant, in connection with a claim under a motor vehicle insurance policy issued by an insurer, (2) with the intent to injure, defraud, or deceive such insurer, (3) did knowingly present to it, or aid or abet in or procure the presentation to it, (4) a notice, statement, or proof of loss, (5) knowing that such notice, statement, or proof of loss contained a false or fraudulent statement or representation, (6) of any fact or thing material to such claim. Larceny by false pretenses, G. L. c. 266, § 30, requires that (1) the defendant knowingly make a false statement, (2) intending the person to whom it was made to rely on its truth, (3) the person to whom it was made relies on the false statement, and (4) based on such reliance, the person parts with personal property. See *Commonwealth* v. *Kenneally,* 10 Mass. App. Ct. 162, 164 (1980), *S.C.,* 383 Mass. 269, cert. denied, 454 U.S. 849 (1981).

[9]We do not accept the defendant's broad assertion that, because the insurance companies were the "objects" of both crimes, one is a lesser included offense of the other. Cf. *Commonwealth* v. *Souza, ante* 478, 494 & n.31 (1998) (where defendant indicted for robbery of motor vehicle, "carjacking" is lesser included offense).