## COMMONWEALTH *vs.* WILLIAM JEROME.

No. 00-P-1743.

Middlesex. February 13, 2002. - December 17, 2002.

Present: RAPOZA, COWIN, & DOERFER, JJ.

*Insurance,* Motor vehicle insurance, Fraud and concealment. *Motor Vehicle,* Insurance. *Fraud.*

The evidence at a criminal trial was insufficient to convict the defendant of motor vehicle insurance fraud under G. L. c. 266, § 111B, where the fact that the defendant submitted to an insurer in connection with a motor vehicle accident claim medical records that may have contained discrepancies or even false statements was not by itself sufficient to establish that the defendant, intending to injure, defraud, or deceive the insurer, knowingly presented to the insurer a false or fraudulent statement or representation material to that claim. [732-738]

INDICTMENTS found and returned in the Superior Court Department on April 4, 1997.

The cases were heard by *Hiller B. Zobel,* J.

*Alan D. Tuttman* for the defendant.

*David R. Marks,* Assistant Attorney General (*David S. Nalven,* Assistant Attorney General, with him) for the Commonwealth.

COWIN, J. After a bench trial, the defendant, an attorney, was convicted of motor vehicle insurance fraud under G. L. c. 266, § 111B, in connection with a claim submitted by him on behalf of a client, Celies Dessin, to Arbella Mutual Insurance Company that arose out of an automobile accident in which Dessin was involved on November 2, 1993.[1] The defendant asserts that the

---

[1]The defendant was acquitted of charges of larceny over $250, G. L. c. 266, § 30, and motor vehicle insurance fraud, G. L. c. 266, § 111B, in connection with a claim to another insurer on behalf of Dessin with respect to an automobile accident of June 24, 1993. He was acquitted of a charge of larceny over $250 arising out of the claim that led to his insurance fraud conviction. A

evidence was insufficient for conviction,[2] and that accordingly it was error to deny his motion for a required finding of not guilty. After an examination of the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Cordle*, 412 Mass. 172, 173 (1992), we conclude that the evidence was not sufficient to prove beyond a reasonable doubt that the defendant, intending to injure, defraud, or deceive the insurer in connection with a motor vehicle claim, knowingly presented to the insurer a false or fraudulent statement or representation material to that claim. See *Commonwealth* v. *Charles*, 428 Mass. 672, 683 n.8 (1999).

1. *The evidence.* We summarize the evidence. Celies Dessin, a driving instructor and the head of an automobile school, claimed involvement in nine vehicle accidents between April, 1990, and January, 1994. Following the first of these accidents, which took place on April 5, 1990, Dessin, alleging neck and back injuries as a result of the accident, filed a claim for lost wages and personal injury protection under a policy issued by Travelers Insurance Company (Travelers) to Dessin's auto school. The defendant did not represent Dessin with respect to this claim.

The second accident occurred on June 5, 1990, and resulted in another claim by Dessin under the same policy, alleging injuries to Dessin's neck, back, and right shoulder. Dessin was represented by the defendant for the first time in connection with this claim. On November 15, 1990, a representative of

charge of conspiracy to commit insurance fraud was dismissed at the request of the Commonwealth.

[2]General Laws c. 266, § 111B, as amended by St. 1988, c. 273, § 60, provides in part that "[w]hoever, in connection with or in support of any application for or claim under any motor vehicle, theft or comprehensive insurance policy issued by an insurer, and with intent to injure, defraud or deceive such insurer knowingly presents to it, or aids or abets in or procures the presentation to it of, any notice, statement, or proof of loss, whether or not the same is under oath or is required or authorized by law or the terms of such policy, knowing that such notice, statement or proof of loss contains any false or fraudulent statement or representation of any fact or thing material to such application or claim, shall be punished by imprisonment in a jail or house of correction for not less than six months nor more than two and one-half years or by a fine of not less than one thousand nor more than four thousand dollars, or both." The statute also provides for restitution to the insurer for any financial loss sustained as a result of the crime.

Travelers interviewed Dessin. Attorney Edward Lang, then the defendant's associate, attended the interview with Dessin. On this occasion, Dessin admitted that he had not brought the injuries arising from the April 5, 1990, accident to the attention of medical providers who treated him for the June 5, 1990, accident, and thus he received overlapping treatment for similar injuries. Following the interview, Mr. Lang sent written notice to Travelers that the defendant's law office would no longer represent Dessin "due to his failure to disclose relevant accident history to [the defendant's] office." It was stipulated that the defendant was aware that Mr. Lang had withdrawn the office from the representation of Dessin in connection with the claim for the June 5, 1990, accident.

Dessin was involved in automobile accidents on February 22, 1991, and November 30, 1991. He was not represented by the defendant in connection with those accidents, nor was there evidence that the defendant was aware of them.

Dessin next alleged that he was in an accident on February 4, 1992, at which time he reported chest, back, left shoulder, and left knee injuries. His initial treatment for this accident was at Somerville Hospital. The hospital's patient record indicates that Dessin reported that he had no past medical history. He then treated with Dr. Joel Charles of the Charles Chiropractic Office who, in response to an inquiry whether Dessin's condition would result in a permanent defect, reported that "there always remains the possibilities of at least [five per cent] permanent impairment in injuries such as these," and rated the patient "for permanent impairment of whole person at [five per cent]." This report, dated July 14, 1992, also indicated that Dessin "reported no similar or previous ill effects" prior to the February 4, 1992, accident.

Dessin returned to the defendant's law office for representation in connection with the February 4, 1992, accident. The defendant filed two claims on his behalf, a personal injury protection (PIP) claim with Dessin's insurer, Safety Insurance Company (Safety), and a bodily injury claim with Liberty Mutual Insurance Company (Liberty Mutual), the insurer of the other driver in the accident. The defendant provided Safety with copies of the Somerville Hospital record indicating that Dessin

had no prior medical history, as well as reports of Dr. Charles diagnosing Dessin's condition and rating him for permanent impairment at five per cent. Safety made payments on the PIP claim. On July 21, 1992, Mr. Lang forwarded to Liberty Mutual copies of the Somerville Hospital report and Dr. Charles's report of July 14, 1992. On August 15, 1992, the defendant forwarded additional information to Liberty Mutual and made reference to Mr. Lang's letter of July 21, 1992. Dessin's bodily injury claim ultimately was settled with a payment by Liberty Mutual of $8,500.

The defendant did not represent Dessin in connection with an accident occurring on March 30, 1992, but did so with respect to an accident on June 24, 1993. Dessin again received initial treatment at Somerville Hospital. His patient record contained the entry, "past medical history denies." Thereafter, he treated with Dr. Emilio Jacques, Jr., at Cambridge Orthopedics and with Dr. Hari Khalsa of Khalsa Chiropractic.[3] Dr. Jacques diagnosed Dessin with shoulder, back and knee injuries, which he attributed to the June 24, 1993, accident. Dr. Khalsa diagnosed the patient as having neck and back injuries. A final typewritten report by Dr. Khalsa contained a handwritten notation, "prior mva recovered."

The defendant's office filed a PIP claim on Dessin's behalf with Commerce Insurance Company (Commerce), Dessin's insurer at the time. Subsequently, Mr. Lang forwarded to Commerce copies of Dessin's PIP application, the records from the Somerville Hospital emergency room (including the reference to the patient's denial of a past medical history), and reports from Cambridge Orthopedics. In addition, the defendant submitted to Commerce the final report of Dr. Khalsa with its reference to "prior mva recovered." Commerce paid PIP benefits to Dessin.

The defendant's office also submitted a claim for bodily injury on behalf of Dessin to Liberty Mutual, which again had insured the other driver involved in the accident. Together with copies of the same documents that had been sent to Commerce in connection with the application for PIP benefits, the defendant's office also provided a case summary dated September 28, 1993,

---

[3]Dr. Jacques and Dr. Khalsa were also indicted for conspiracy in connection with Dessin's claims. These charges were nol prossed.

prepared by Mr. Lang, that described the accident, the treatment, and the diagnoses. By this time, Dr. Jacques had reported that Dessin's injuries from the most recent accident (June 24, 1993) were resolving themselves, while Dr. Khalsa, although he had discontinued treatment of the patient, had reported that Dessin continued to experience recurrent pain and that his prognosis was fair. In the case summary, Mr. Lang reported that Dessin had been discharged from active care on August 14, 1993, but that he "continued to suffer thereafter from his injuries, and had continued his prescribed physical therapy exercises at home until the present time." Liberty Mutual settled this case as well, again for $8,500.

The final accident as to which the defendant represented Dessin, and regarding which the defendant came to grief in these criminal proceedings, occurred on November 2, 1993. Dessin again sought emergency assistance at Somerville Hospital, where he complained of shoulder, low back, and left leg pain. He denied having a past medical history, and was diagnosed with neck and back strain. Thereafter, he again was treated by Dr. Jacques and Dr. Khalsa. Dr. Jacques reported that the patient's "symptoms, complaints, and subjective and objective findings are causally related to the accident that occurred on [November 2, 1993]." Dr. Jacques treated Dessin on seven occasions, discharging him on January 22, 1994. Dr. Khalsa reported that "[t]he subjective complaints, physical examination findings, and the patient's past medical history lead to a conclusion that these injuries are causally related to the accident of November 2, 1993." He found Dessin to be totally disabled between the date of the accident and January 3, 1994, and opined that he would be likely to experience "flare-ups of pain over the next several months." Dr. Khalsa's records again contained the entry, "Prior mva recovered."

Dessin applied to Arbella Mutual Insurance Company (Arbella), then the insurer of the automobile school, for PIP benefits. In this regard, the defendant submitted to Arbella the Somerville Hospital record, as well as the records of Dr. Jacques and Dr. Khalsa, pertaining to Dessin's treatment after the November 2, 1993, accident. Dessin also asserted a claim for bodily injuries with Arbella, which insured the other driver in

the accident. Dessin refused to cooperate with Arbella's request that he attend an independent medical examination.[4] Subsequently, the defendant, on Dessin's behalf, forwarded to Arbella a demand for a settlement of $30,000, asserting that Dessin had periods of total and partial disability, as well as residual pain and a need for continued medical treatment.

Dessin was involved in another accident on January 28, 1994, but was not represented by the defendant with respect to it. With regard to the November 2, 1993, accident, Arbella, aware that Dessin had asserted a number of other motor vehicle accident claims, requested that he provide medical records pertaining to those claims or, in the alternative, releases so that Arbella could obtain the information on its own. The defendant responded by providing releases pertaining to the immediately preceding accident occurring on June 24, 1993, and the subsequent accident occurring on January 28, 1994, and wrote that "[i]nformation regarding any other accidents is in no way relevant to this claim." Arbella did not pursue the request.

Thereafter, Mr. Lang, by this time the defendant's partner, forwarded to Arbella medical reports regarding the June 24, 1993, accident. These included a report of Dr. Jacques indicating that the injuries caused by that accident were resolving themselves, and that Dessin denied having further pain in his left shoulder and knees, although he continued to report cervical spine pain and stiffness. Also forwarded was the report of the Somerville Hospital emergency room reflecting Dessin's denial of a prior medical history. In addition, Mr. Lang forwarded a report of Dr. Khalsa stating that "the patient's symptoms were essentially resolved and manageable with home care"; that he continued to complain of intermittent neck and low back stiffness; that his condition had become "permanent and stationary," with a fair prognosis; and that, given the nature of the injuries, "there is a high probability that there will be future flare-ups of symptoms, without further trauma, for an indeterminate period of time." Mr. Lang added on his own, "You will note Mr. Dessin completed all treatment [from the accident of

---

[4]There is no indication that the defendant represented Dessin at the time of Dessin's refusal, or that Dessin resisted the examination pursuant to the defendant's advice.

June 24, 1993] on August 11, 1993 and had no residuals, three months prior to this loss [the accident of November 2, 1993]." Subsequently, Arbella settled the bodily injury claim for $6,500. A claims representative in Arbella's special investigations unit was permitted to testify that, had he known the details of Dessin's prior claims, he would not have settled the case.[5]

2. *Discussion.* A conviction of motor vehicle insurance fraud, G. L. c. 266, § 111B, "requires that (1) the defendant, in connection with a claim under a motor vehicle insurance policy issued by an insurer, (2) with the intent to injure, defraud, or deceive such insurer, (3) did knowingly present to it, or aid or abet in or procure the presentation to it, (4) a notice, statement, or proof of loss, (5) knowing that such notice, statement, or proof of loss contained a false or fraudulent statement or representation, (6) of any fact or thing material to such claim." *Commonwealth* v. *Charles*, 428 Mass. 672, 683 n.8 (1999). The defendant does not contest that his actions satisfied parts (1), (3), and (4) of this definition, given that he admits that he represented a client with respect to a motor vehicle accident claim, and that he knowingly submitted information to the insurer with respect to that claim. He denies that he knew that any portion of the submitted information was false, that any false information was material, and that he intended to defraud or otherwise injure the insurer.

We recognize that knowledge or intent often cannot be proved by direct evidence, but instead must be proved by inferences drawn from evidence of relevant circumstances. See *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). Such inferences need not be necessary or inevitable, only reasonable and possible. *Corson* v. *Commonwealth*, 428 Mass. 193, 197 (1998). However, the result may not be a product of conjecture or speculation, or the piling of inference upon inference. *Com-*

---

[5]That same claims representative had requested and received from the claims index bureau a report showing that Dessin had had multiple previous insurance claims, as well as a subsequent claim. It was also that same representative who requested that the defendant supply medical records in connection with those claims, who received the defendant's refusal to provide records other than those relating to the immediately preceding accident and the subsequent one, and who did not pursue the matter. He testified that the cost of defending the claim would have exceeded the amount of the settlement.

*monwealth* v. *Mandile*, 403 Mass. 93, 94 (1988). In deciding whether the evidence is sufficient to support a finding of guilt in this circumstantial case, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have been satisfied beyond a reasonable doubt with regard to each element of the alleged offense. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). In doing so, we focus on whether the evidence warrants the findings necessary for a determination of guilt specifically with respect to the defendant's submissions to Arbella, the only submissions for which he was convicted.

The Commonwealth's case is based on the proposition that, with respect to the November 2, 1993, accident, the defendant submitted to Arbella documents containing material falsehoods; that he knew that such falsehoods were present in the documents; and that he submitted the documents with the fraudulent purpose of obtaining a settlement to which the insurer might not have agreed had the truth been revealed. In addition, according to the Commonwealth, the defendant furthered the deception by false statements of his own and by rejecting the insurer's request for information that would have revealed the falsehoods. The theory created a dual burden for the Commonwealth, i.e., to show that the statements in question were false and that the defendant knew they were false when he forwarded them to Arbella. The Commonwealth contends that it has satisfied the burden by a showing of four knowing misrepresentations on the defendant's part, the defendant knowing that certain statements were false by virtue of his past representation of the client in connection with similar accidents. We examine each of the four.

(i) The defendant submitted to the insurer a Somerville Hospital report of Dessin's emergency room treatment the day after the November 2, 1993, accident. That document contained the notation "PMH Ø," meaning that Dessin had reported no prior medical history during his intake interview. The Commonwealth suggests that the defendant submitted the document with the intention of deceiving the insurer into believing that Dessin had had no prior accidents.

The problem with this theory is that the evidence leaves unknown what question or questions elicited Dessin's "no prior

medical history" response, and therefore there is no basis for concluding that the response was false. There was testimony that a patient with a prior medical history might nevertheless respond in the negative if he no longer had symptoms associated with the prior condition. The unadorned entry is too ambiguous in this context to support a reasonable inference of falsification. See *Corson* v. *Commonwealth*, *supra* at 199.

Furthermore, the evidence does not warrant a finding that the defendant submitted the record with the purpose of misleading the insurer regarding Dessin's previous accidents. In presenting documents to Arbella regarding the claim arising from the November 2, 1993, accident, the defendant included a report by Dr. Khalsa that contained the notation, "prior mva recovered." Submission of a document that directly referred to a prior accident and that implied that there had been bodily injuries associated therewith (given that the patient had "recovered") is hardly consistent with an intention to conceal the fact of the prior accident. Accordingly, the Somerville Hospital record does not establish either the existence of a falsehood or an intention on the part of the defendant to employ the falsehood in order to obtain an advantage with respect to the claim.

(ii) The Commonwealth next focuses on the report of Dr. Khalsa that indicated "prior mva recovered," charging that the defendant, by submitting that report, failed to disclose that another physician (Dr. Charles) had opined that Dessin had a five per cent impairment as the result of an earlier accident. The opinion on which the Commonwealth relies was rendered by Dr. Charles in connection with his treatment of Dessin following the latter's accident on February 4, 1992. Dr. Charles determined that Dessin was totally disabled from February 4, 1992, to March 18, 1992, and partially disabled from March 19, 1992, to April 2, 1992.[6] The patient stopped treating with Dr. Charles on April 2, 1992. Asked whether Dessin's condition would result in any permanent defect, Dr. Charles stated, "There always remains the possibilities of at least [five per cent]

---

[6]The concepts of total disability and partial disability are those employed in the worker's compensation statute, G. L. c. 152, and refer to a total or partial inability to earn income at the level enjoyed by the injured person prior to the accident.

permanent impairment in injuries such as these," and rated Dessin "for permanent impairment of whole person at [five per cent]."

Following the accident of November 2, 1993, Dr. Khalsa treated Dessin for injuries that the physician concluded were causally related to that accident. In a report that the defendant submitted to Arbella, Dr. Khalsa referred to "the patient's past medical history" as a basis for his findings, thereby further rebutting any negative inference that might be drawn from the Somerville Hospital record. In a discharge report dated February 14, 1994, also submitted by the defendant to Arbella, Dr. Khalsa found Dessin totally disabled from November 2, 1993, to January 3, 1994; stated that his prognosis was "fair"; and expressed the view that the patient would experience "flare-ups of pain over the next several months." The Commonwealth argues that the defendant's submission of these documents to the insurer supports a finding that he intended to defraud.

We are unable to locate a falsehood in Dr. Khalsa's reports that is sufficiently apparent to justify an inference that the defendant knew of it. Dr. Charles treated Dessin close to two years earlier. His opinion that Dessin might experience a five per cent permanent impairment from the February 4, 1992, injury was expressed as a possibility. Dessin asserted no claim for permanent impairment either at that time or in connection with the November 2, 1993, accident. That Dr. Khalsa might fairly conclude that the possible five per cent impairment had not materialized, and that Dessin's condition at the time was wholly attributable to the more recent accident, is hardly remarkable. The same opinion was rendered by Dr. Jacques. There was no evidence that the defendant influenced the reports in question. We conclude that this evidence did not support a finding that the defendant knowingly submitted a false statement with the intention of deceiving the insurer.

(iii) The Commonwealth offers the defendant's resistance to the request of Arbella's investigator as evidence that it was his purpose to defraud the insurer by concealing Dessin's prior injuries. In this regard, the investigator requested medical reports pertaining to Dessin's prior accidents on April 5, 1990; June 5, 1990; February 22, 1991; November 30, 1991; February 4,

1992; March 30, 1992; and June 24, 1993; and his subsequent accident on January 28, 1994. The defendant responded by forwarding authorizations for the insurer to obtain information regarding the immediately preceding accident (June 24, 1993) and the subsequent accident (January 28, 1994), and stated that "[i]nformation regarding any other accidents is in no way relevant to this claim."

We agree that the information sought by the insurer was material to the processing of Dessin's claim. We do not agree that the defendant's refusal to produce the information in the circumstances is sufficient evidence of criminal intent. If the government is to prosecute as criminal statements made by attorneys in representation of their clients, it cannot leave vague the border between zealous advocacy and fraudulent behavior. As formal and informal discovery requests have become a way of life in the present practice of law, resistance to such discovery has also become customary. Such resistance is sometimes justified, sometimes not; but unjustified resistance is not criminal per se. The defendant's response that requests for information preceding the June 24, 1993, accident were not relevant to the present claim is at least as consistent with honest strategy — to prevent the history of prior injuries from which the client had recovered from unfairly influencing the insurer adversely to the client in connection with the present claim — as it is consistent with intent to defraud. That this was the insurer's first request may also have been a factor, given that a refusal to provide information when first asked often, as it did here, pays the dividend that the request is not pursued. Whether such a strategy constitutes appropriate practice of law is not the question before us. We address only the question whether the attempt to deflect the information requests in this case is sufficient evidence of an intention to defraud the insurer, and we conclude that it is not.[7]

(iv) Finally, the Commonwealth charges that Mr. Lang, the

---

[7]Our decision is obviously not intended to deflect attention from attorneys' ethical responsibilities, including, but not limited to, those embraced by Mass.R.Prof.C. 1.16(a), 426 Mass. 1369 (1998) ("a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: [1] the representation will result in violation of the rules of professional conduct or other law"), and Mass.R.Prof.C. 1.16(b), 426 Mass. 1369 (1998) ("a lawyer may withdraw from representing a client

defendant's associate and subsequently his partner, submitted to Arbella directly contradictory statements regarding the June 24, 1993, and November 2, 1993, accidents, thereby demonstrating the defendant's intent to defraud the insurer. We pass the question whether Mr. Lang's statements are attributable to the defendant for purposes of a prosecution under G. L. c. 266, § 111B, because this evidence, even if chargeable to the defendant, does not support a finding that the defendant knowingly submitted false statements regarding the November 2, 1993, accident.

The Commonwealth introduced evidence that on September 28, 1993, in support of Dessin's bodily injury claim arising from the June 24, 1993, accident, Mr. Lang submitted to Liberty Mutual a "case summary" indicating that Dessin had been discharged from active care on August 14, 1993, but that he "continued to suffer thereafter from his injuries, and had continued his prescribed physical therapy exercises at home until the present time."

On May 8, 1995, Mr. Lang, pursuant to the defendant's agreement to provide Arbella information pertaining to the June 24, 1993, accident, submitted to Arbella copies of reports by Dr. Jacques, Dr. Khalsa, and the Somerville Hospital emergency room. With this information, he wrote, "You will note Mr. Dessin completed all treatment on August 11, 1993 and had no residuals, three months prior to this loss [referring to the accident of November 2, 1993]." The Commonwealth points to the discrepancy in the 1993 and 1995 statements regarding Dessin's condition in August, 1993, as evidence of a knowing attempt to deceive the insurer with respect to the November 2, 1993, claim.

However, the inference that deception was Mr. Lang's purpose becomes considerably weakened in light of the fact that Mr. Lang simultaneously submitted to the insurer the specific medical reports underlying his judgment. One such report, that of Dr. Jacques, referred to Dessin's injuries as resolving, and stated that Dessin denied having further shoulder or knee pain from the accident, although he continued to complain of cervi-

if . . . [1] the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent").

cal spine pain and stiffness. At the same time, Mr. Lang submitted a report by Dr. Khalsa to the effect that "the patient's symptoms were essentially resolved and manageable with home care." The report continues that the patient did have "residual subjective complaints"; that his condition "had become permanent and stationary"; and that "there is a high probability that there will be future flare-ups of symptoms, without further trauma, for an indeterminate period of time." Thus, Mr. Lang himself provided Arbella with the documentation on which the Commonwealth relies to establish fraud. We view it as highly unlikely that, were there an intent to defraud, the deceiver would have placed this information in the hands of the victim. Apart from that, an arguably inaccurate statement that there were "no residuals" from a prior accident for which the client was no longer receiving treatment strikes us as an unacceptably thin reed on which to support a conviction.

This conviction required that the trier of fact conclude beyond a reasonable doubt that, given the defendant's representation of Dessin in connection with four accidents occurring between June 5, 1990, and November 2, 1993, the defendant must have known by the time of the last accident that the client was cheating, and that accordingly the defendant's pursuit of the claims in the manner described was fraudulent. For the reasons set forth above, we are not convinced that the evidence supports that proposition. The Commonwealth has not proved, beyond a reasonable doubt, that the defendant submitted existing medical records in bad faith. The reports of Dr. Jacques and Dr. Khalsa were consistent with Dessin's contention that his injuries were totally attributable to the November 2, 1993, accident. The defendant neither created the records himself nor influenced the doctors to create them. If the reports contained discrepancies, or even false statements, the fact that they did is not by itself evidence sufficient to establish that the lawyer was complicit in a misrepresentation. See *Commonwealth* v. *Jean-Charles*, 398 Mass. 752, 758 (1986). The evidence here at best sustained equally either of two inconsistent propositions, and accordingly the Commonwealth has not satisfied its burden. See *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962).

3. *Disposition.* The defendant's motion for a required finding

of not guilty should have been allowed. The judgment is reversed, the guilty finding is set aside, and judgment shall enter for the defendant.

*So ordered.*