COMMONWEALTH *vs.* NICKOLAS DEJARNETTE.

No. 08-P-324.

Worcester. March 11, 2009. - August 26, 2009.

Present: DUFFLY, KAFKER, & GRAINGER, JJ.

*Controlled Substances. Firearms. Search and Seizure,* Forcible entry by police, Exigent circumstances, Consent. *Evidence,* Declaration against interest, Past recollection recorded. *Practice, Criminal,* Disclosure of evidence. *Witness,* Cross-examination.

A trial court judge did not err in denying a criminal defendant's pretrial motion to suppress evidence seized by police officer during a search of an apartment in which the defendant was staying, where the officers' forced entry into the apartment to apprehend the defendant's brother (for whom they had an arrest warrant) was justified by exigent circumstances and the subsequent protective sweep was reasonable in both time and scope [92-95]; and where the officers, after arresting the brother, did not search the apartment until they obtained free and voluntary consent from a lawful tenant, who was present in the apartment and on whose apparent authority the officers reasonably relied in good faith to search a child's backpack in plain view on the floor [95-96].

At a criminal trial, error arose from the defense counsel's agreement to the admission in evidence, as a statement against penal interest, of an unavailable witness's statement to police, which contained both narrowly self-inculpatory statements as well as self-exculpatory ones; however, the agreement to the admission of the entire statement did not constitute ineffective assistance, where it was not manifestly unreasonable, given that the defendant was found not guilty on one charge; where the statement could be viewed as a self-serving attempt to shift blame; where the statement was duplicative of other evidence; and where there was ample other evidence against the defendant. [96-100]

There was no merit to a criminal defendant's claim that the Commonwealth's failure to disclose evidence of promises, rewards, and inducements given to a witness merited dismissal of the indictments. [100-101]

At a criminal trial, the judge properly excluded from evidence a police report that was offered without proper foundation [101] and gave the defendant ample opportunity to confront and cross-examine a certain witness. [101-102]

INDICTMENTS found and returned in the Superior Court Department on June 13, 2003.

A motion to dismiss was heard by *Elizabeth M. Fahey*, J.; a pretrial motion to suppress evidence was considered by *Jeffrey A. Locke*, J.; and the cases were tried before *Peter W. Agnes, Jr.*, J.

*Nicole M. Procida* for the defendant.

*Ellyn H. Lazar-Moore*, Assistant District Attorney, for the Commonwealth.

KAFKER, J. Searching an apartment in which the defendant was staying, police found a Doctor Seuss backpack with the defendant's name written inside containing cocaine, MDMA (a drug commonly known as "ecstasy"), and ammunition. A grand jury indicted the defendant for trafficking in 200 or more grams of cocaine, in violation of G. L. c. 94C, § 32E(*b*)(4); possession of a class B substance (MDMA) with intent to distribute, in violation of G. L. c. 94C, § 32A(*a*); possession of a firearm without a firearm identification card (FID card), in violation of G. L. c. 269, § 10(*h*); and possession of ammunition without an FID card, in violation of G. L. c. 269, § 10(*h*).[1]

In December, 2005, the defendant was tried in Superior Court before a jury. The jury convicted the defendant of trafficking in cocaine, possession of MDMA with intent to distribute, and possession of a firearm and ammunition without an FID card.

The defendant raises six claims on appeal. He challenges (1) the denial of his motion to suppress, (2) the admission of an unavailable witness's statement to police, (3) the prosecution's presentation of evidence to the grand jury, (4) the denial of his motion to dismiss for delayed disclosure of evidence, (5) the exclusion of a police report as hearsay, and (6) the trial judge's limitation of his cross-examination of a key witness. The defendant also claims ineffective assistance of counsel with respect to some of these alleged errors. For the reasons that follow, we affirm the defendant's convictions.

1. *Motion to suppress.* We summarize the facts found by the

---

[1] The defendant was also indicted for possession of a class E substance (amitriptyline) with intent to distribute, in violation of G. L. c. 94C, § 32D(*a*), and possession of marijuana with intent to distribute, in violation of G. L. c. 94C, § 32C(*a*). The amitriptyline count was dismissed by agreement on December 18, 2003, and the judge entered a required finding of not guilty on the marijuana count at the close of the Commonwealth's case.

motion judge. Around 1:00 or 1:30 P.M. on March 28, 2003, the State police received a tip from a confidential informant "indicating that two fugitives for whom warrants[2] had been issued in connection with a shooting incident were located at a particular address on Gibbs Street in Worcester."[3] Officers were promptly dispatched to establish surveillance at that location, which was 36A Gibbs Street.

Around 2:50 P.M., shortly after surveillance began, the officers observed the defendant and another individual leave the apartment and drive away. The officers followed the vehicle and stopped it within one-eighth to one-quarter of a mile of Gibbs Street. "The stop occurred on a busy thoroughfare with a good deal of traffic, and . . . attracted numerous witnesses or observers." The defendant, who was found lying across the back seat of the vehicle, was arrested on the outstanding warrant in connection with the shooting. He had over $2,500 on his person. Following his arrest, the defendant told the police that his brother Brandon was back at 36A Gibbs Street.

After establishing a perimeter around the building, the officers knocked on the apartment door and announced their presence. Receiving no response, they proceeded to pound on the door for one to two minutes. No one answered, but the officers heard a "loud commotion" from within the apartment, including banging sounds and voices. After waiting "a sufficient period of time" and receiving no reply, the officers forcibly entered the dwelling, some with guns drawn, and conducted a sweep of the apartment.

Inside, they discovered approximately five individuals. One was Jennifer Chicklis, who they quickly determined was the lawful tenant of the apartment, residing there with her brother and at least one of her children. The officers gathered all of the individuals, including Chicklis, in the living room. Around the

---

[2]The lieutenant in charge of the search testified that the arrest warrants were issued for an incident two weeks earlier in which the defendant and his brother Brandon were banging on their mother's door. She wanted them to leave and asked the landlord to get rid of them. The defendant assaulted the landlord with a cinder block. The dispute then escalated to the point where Brandon handed the defendant a handgun and the defendant chased the landlord and shot him three times in the leg.

[3]The lieutenant also testified that the confidential informant said the defendant and his brother "should be in a large possession of cocaine and firearms."

same time, an officer outside the building observed Brandon jump from a second-floor bedroom window and apprehended him.

The officers informed Chicklis that they wanted to search her apartment, they believed there were drugs and a firearm in it, and they were planning to apply for a search warrant. Chicklis told the officers, "Do whatever you want," and "Look around. Search. You won't find any drugs." While she said this, there were packets of white powder in plain view on the kitchen table, which the officers had observed during the protective sweep and believed contained cocaine. Before beginning the search, the officers escorted Chicklis and her brother into the bedroom, fully explained the consent form, and obtained their written authorization to search.

During the ensuing search, the officers found drugs and ammunition inside what appeared to be a child's backpack bearing a Doctor Seuss logo. That backpack was located immediately inside the apartment, to the right of the door, on the floor of the dining area. After the backpack was unzipped and its contents, including drugs and ammunition, were emptied, the officers discovered the name "Nickolas Dejarnette" written on the inside lining. This writing was not visible when the backpack was closed. There were no other markings on the backpack that indicated ownership. The officers also found a safe in the master bedroom closet. Chicklis told them that the safe was hers and that only she had the combination. She voluntarily gave them the combination and opened it. Inside, they found more drugs and a small handgun.

The motion judge further found that the defendant and his brother had contacted Chicklis several days earlier and asked if they could stay in her apartment. She allowed them to stay on the living room sofa. They began staying with Chicklis on either March 27 or 28, and with Chicklis's permission, they placed certain items that they said were jewelry in the safe.

Following the hearing, the motion judge denied the defendant's motion to suppress. The judge found that the police had probable cause and exigent circumstances justifying the forced entry into the apartment. He also concluded that the "protective sweep [that followed] was reasonable both in time and in scope and was warranted by the circumstances. The officers did not

conduct a search other than looking in areas where an individual might be located."

The motion judge further found that Chicklis was the lawful tenant of the apartment and that she freely and voluntarily gave consent to search the premises for drugs, guns, or weapons. He found there was "no police deception, and that there was no undue force or pressure brought to bear that would otherwise invalidate Miss Chicklis's consent." The motion judge concluded that Chicklis had apparent authority to consent to a search of the Doctor Seuss backpack. He also concluded that "[t]he police had no reason to believe at the time they conducted that search that . . . the Doctor Seuss backpack[] belonged to this defendant or was exclusively controlled by this defendant, or was not within the common control and authority of Jennifer Chicklis to authorize[] its search." Accordingly, the motion was denied.

In reviewing the denial of a motion to suppress, "[w]e accept the judge's subsidiary findings absent clear error but conduct an independent review of his ultimate findings and conclusions of law." *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002).

a. *Forced entry and exigent circumstances.* We begin with the issue of the forced entry into 36A Gibbs Street to apprehend the defendant's brother and whether the defendant's rights under the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights were violated by the entry or use of the evidence seized as a result of it. Law enforcement officers may forcibly enter a suspect's home if they have an arrest warrant for him and reason to believe that he is there. *Payton* v. *New York*, 445 U.S. 573, 603 (1980). *Commonwealth* v. *Silva*, 440 Mass. 772, 776 (2004). "A separate search warrant is not required." *Ibid.* Where, however, officers are seeking to execute the arrest warrant at a third party's residence, the rights of "persons not named in the warrant" who live at that residence are directly implicated. *Steagald* v. *United States*, 451 U.S. 204, 212 (1981). Absent a search warrant or exigent circumstances, evidence seized as a result of such a forcible entry cannot be used against residents not named in the warrant. *Id.* at 216, 221.[4]

In the instant case, the police had an arrest warrant for the

---

[4]The subject of the arrest warrant, even if arrested in the third party's

defendant and his brother, but the defendant was arrested outside 36A Gibbs street. The forcible entry into the apartment was only to arrest Brandon. The question then becomes whether the evidence seized as a result of the forced entry to arrest Brandon can be used against the defendant, who apparently had a reasonable expectation of privacy as an overnight guest in the apartment.[5] See *Minnesota* v. *Olson*, 495 U.S. 91, 98 (1990) ("an overnight guest has a legitimate expectation of privacy in his host's home"). See also *Steagald, supra* at 219 ("The issue here . . . is not whether the subject of an arrest warrant can object to the absence of a search warrant when he is apprehended in another person's home, but rather whether the residents of that home can complain of the search").

In this case, we conclude that there were exigent circumstances justifying the police entry into 36A Gibbs Street to apprehend Brandon, and therefore the entry does not require suppression of the evidence seized as a result of it. "To support a warrantless search on the basis of exigent circumstances, the Commonwealth must demonstrate that the police had probable cause and were faced with exigent circumstances such as danger to their lives, danger to the lives of others, or the destruction of evidence, such that it would be impracticable to obtain a warrant." *Commonwealth* v. *Moore*, 54 Mass. App. Ct. 334, 338 (2002).

Probable cause that Brandon had committed a crime involving a shooting was established by the arrest warrant. The Commonwealth also demonstrated that the police were faced with exigent circumstances that presented a danger to them or others. "Factors [that] . . . tend[] to support a finding of exigency include a showing that the crime was one of violence or that the suspect was armed, a clear demonstration of probable cause, strong reason to believe that the suspect was in the dwelling, and a likelihood that the suspect would escape if not apprehended. Additional considerations testing the reasonableness of police conduct are whether

home, is not the beneficiary of this additional protection. *Commonwealth* v. *Allen*, 28 Mass. App. Ct. 589 (1990). "It would produce an unacceptable paradox to afford the subject of an arrest warrant greater protection in the home of another than in his or her own home." *Id.* at 593.

[5]The defendant's reasonable expectation of privacy in the apartment has not been challenged by the Commonwealth.

the entry is peaceable and whether the entry is in the nighttime." *Commonwealth* v. *Forde*, 367 Mass. 798, 807 (1975).[6]

The crime for which the arrest warrants were issued was extremely violent. Using a gun handed to him by Brandon, the defendant was accused of shooting his mother's landlord three times in the leg. The police also had reason to believe that Brandon would be armed, as the defendant was not in possession of the gun used in the shooting when he was apprehended outside the apartment.[7] Cf. *Commonwealth* v. *Cataldo*, 69 Mass. App. Ct. 465, 471 (2007) (apprehension of defendant without finding gun used in prior crime on his person increased probability that it was in his home). Moreover, there was also a "strong reason" to believe that Brandon was inside the apartment. *Commonwealth* v. *Forde*, *supra*. The officers were also legitimately concerned about Brandon escaping. Brandon and the defendant were taking precautions to avoid being apprehended by the police, as demonstrated by their moving into Chicklis's apartment and the defendant's lying across the back seat of the car when he left the apartment. Finally, the entry (although not peaceable) was made during the daytime. In sum, the police had probable cause to believe that Brandon had committed a crime of violence, and exigent circumstances justified immediate action. Their forcible entry, after they knocked and announced their presence and heard a loud commotion coming from within the apartment but received no response, was also reasonable under the circumstances.[8]

Once inside the apartment, the officers conducted a protective

[6]Not all of these factors need be satisfied to support a finding of exigent circumstances. *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 255 (1982).

[7]According to the lieutenant's testimony at the suppression hearing, the confidential informant had also indicated that the Dejarnettes should be in possession of firearms.

[8]The exigency was not manufactured by any identifiable deficiencies in police work as argued by the defendant. The police had sought and received arrest warrants for the defendant and his brother and had very good reason to execute the warrants as soon as possible given the violent nature of the crime and the reasonable concern that the defendant or Brandon would be armed. There is also nothing in the record, nor an argument by the defense, to the effect that a search warrant for the apartment could have been obtained based on the confidential informant's tip alone. The defendant only argues that the police should have sought a search warrant after apprehending the defendant and learning that Brandon was still in the apartment. By taking time to get a

sweep that the motion judge found reasonable in both time and scope. We agree. They searched for nothing other than Brandon, a fugitive for whom they had an arrest warrant, and stopped after they apprehended him. The officers did not search the apartment for anything else until Chicklis, the lawful tenant, gave her consent.

b. *Chicklis's authority to consent to search.* On appeal, the defendant claims that Chicklis did not have the authority to consent to the search of his Doctor Seuss backpack in which 358.49 grams of cocaine, fifty MDMA tablets, and ammunition were found. The motion judge concluded that the officers reasonably relied in good faith on her apparent authority to consent. We agree.

"Police may conduct a warrantless search with the free and voluntary consent of a person possessing the ability and apparent authority to consent." *Commonwealth* v. *Yehudi Y.*, 56 Mass. App. Ct. 812, 816 (2002). Chicklis, as the lawful tenant of the apartment, had the actual authority to consent to the search of her apartment. As found by the judge, her consent was freely and voluntarily given and the scope of her consent to search within the apartment was unlimited. See *Commonwealth* v. *Sanna*, 424 Mass. 92, 98-99 (1997). This consent extended to packages and closed containers within her control. See *Florida* v. *Jimeno*, 500 U.S. 248, 251 (1991) ("[t]he scope of a search is generally defined by its expressed object"; defendant's general consent to search his car for drugs included containers within the car that might conceal drugs); *Commonwealth* v. *Gaynor*, 443 Mass. 245, 255 (2005).

Chicklis did not, however, have actual authority to permit the officers to search the Doctor Seuss backpack if the defendant had exclusive use and control of it. The question then becomes whether Chicklis had the apparent authority to allow the search

search warrant after the apprehension of the defendant, the police risked Brandon "becom[ing] suspicious when [his] confederate detained by police failed to return or make contact." *Commonwealth* v. *McAfee*, 63 Mass. App. Ct. 467, 475 (2005). Compare *ibid.* (no exigency created by public arrest of defendant's recent narcotics customer where the defendant was unlikely to be awaiting the return of or contact from the customer, to whom he had no other connection). The arrest of the defendant had also attracted attention from numerous observers near the apartment.

of the backpack. The standard for apparent authority is whether "the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' that the consenting party had authority" to allow the search of the property. *Illinois* v. *Rodriguez*, 497 U.S. 177, 188 (1990), quoting from *Terry* v. *Ohio*, 392 U.S. 1, 21-22 (1968). See *Commonwealth* v. *Rogers*, 444 Mass. 234, 249 (2005) (Greaney, J., dissenting). "The focus is on the consenting person's relationship to the premises or items." Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 11-2[b] (2008). Here, the consenting person was the lawful occupant of the apartment, and the item to be searched was a child's backpack found in the kitchen of the apartment. The consenting person was also the mother of a child living in the apartment.

According to the defendant, the officers could not have reasonably believed that Chicklis had authority to consent to the search of his backpack. He contends that, at the time of the search, the police knew that he and his brother were staying with Chicklis and that their backpacks were in the kitchen. While there is evidence that Chicklis knew that the Dejarnettes had put their backpacks in the kitchen and that she conveyed this to police *after* the search when she gave them a statement, there was no indication that she mentioned the backpacks to the officers prior to the search. She did tell the officers that one of her children lived with her. Armed with this knowledge, it was reasonable for the officers to believe that a Doctor Seuss backpack in plain view on the kitchen floor belonged to her daughter and that Chicklis had the authority to consent to its search. Cf. *Commonwealth* v. *Ortiz*, 422 Mass. 64, 70 (1996) (parent's ability to consent to search of child's room). Their reasonable reliance on her apparent authority did not invalidate the search. The denial of the defendant's suppression motion is affirmed.

2. *Admission of William Coleman's statement.* William Coleman was Chicklis's boyfriend and was also present in her apartment on the day of the search. Following the search, Coleman gave a statement to the police. In that statement, Coleman said that he did not live in the apartment, but stayed with Chicklis now and then, and that the defendant had been around for the last two weeks or so and was sleeping on Chicklis's couch.

When asked who the drugs belonged to, Coleman responded, "I heard [the defendant] is a dealer [and] he deals coke. I smoke weed with him and Jen[']s brother (Julius) and [Coleman's friend] Fish. I've never seen him deal." Coleman also told the police that he had been in the bedroom safe, but that he did not know the combination. When asked if he saw anyone else go into the safe, Coleman said that he had not, but added that he had seen the defendant in the closet a few times and the only reason to go into that closet would be to use the safe.

Coleman also told the officer that he did not know whose cocaine was on the kitchen table, whose backpack was found in the kitchen, or whose gun was in the safe. He further stated that he had never seen the defendant with a gun in the house but he had seen him with a small gun on some other occasion. When asked if there was any reason why his fingerprints would be found on any of the contraband in the apartment, Coleman replied, "The [w]eed bag will have my prints because I smoke weed and I moved it on the table. It was about a 6" bag (one gal). The [c]oke I might have moved on the table also. Because Fish does 'P' ([c]oke) only a small bag or so." When asked who else's prints would be on the contraband, Coleman said he thought Fish's prints would be on the cocaine and marijuana.

Coleman was unavailable for trial because he invoked his privilege against self-incrimination. The defendant wanted to offer Coleman's declaration that his own fingerprints would be found on some of the drugs in the apartment under the declaration against penal interest exception to the hearsay rule. The Commonwealth had no objection so long as the entire statement was admitted. The trial judge replied that he "certainly wouldn't allow on the theory of declaration against interest selected portions of the statement to come in" and that if some of Coleman's statements came in, then the Commonwealth might have the right to put in other statements damaging to the defendant "in an effort not to give the jury a distorted version of what [Coleman] said." Defense counsel did not object and, after consulting with the defendant, he agreed that "[b]y right, if I allude to a portion of this, the whole thing should come in."

The defendant now claims that the judge erred by admitting Coleman's entire statement and that his trial counsel acted inef-

fectively by introducing it. Relying on *Commonwealth* v. *Marrero*, 60 Mass. App. Ct. 225 (2003), the defendant argues that only Coleman's declarations that his fingerprints would be found on the marijuana and possibly on the cocaine were admissible as declarations against his penal interest. He contends that the remainder of the statement should not have been admitted.

In *Marrero*, the defendant offered an unavailable witness's entire statement to police. The trial judge refused to allow any of the statement into evidence because only one isolated, irrelevant declaration was incriminating. We agreed that the defendant could not use one irrelevant declaration against penal interest to get the rest of an otherwise noninculpatory statement into evidence. *Id.* at 230.

In the instant case, the arguably self-inculpatory statements were not irrelevant. Coleman's statements regarding his fingerprints on the marijuana and cocaine were relevant as they provided some support for shifting at least some responsibility for the marijuana and cocaine found in the apartment, but outside the Doctor Seuss backpack, from the defendant to Coleman. In fact, the judge entered a required finding of not guilty on the defendant's marijuana count at the close of the Commonwealth's case.

The larger narrative in which these statements were made, however, was clearly self-exculpatory, not self-inculpatory. As he was being questioned by police in an apartment where there was substantial evidence of drug trafficking and distribution, and firearms and ammunition, he admitted only to some use of marijuana and possibly the touching of a bag of cocaine. The thrust of the statement was to shift the focus of responsibility for the drugs and gun found in the apartment to the defendant.

The United States Supreme Court has been cautious about admitting statements in which self-inculpatory and self-exculpatory statements are combined. "[Federal Rule of Evidence] 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson* v. *United States*, 512 U.S. 594, 599 (1994). See Mass. G. Evid. § 804(b)(3) (2008-2009). Nonetheless, "[o]ne of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly

persuasive because of its self-inculpatory nature." *Williamson, supra* at 599-600. Consequently, "when part of the confession is actually self-exculpatory, the generalization on which Rule 804(b)(3) is founded becomes even less applicable. Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements." *Id.* at 600.

The solution for the Supreme Court, at least when confronted with a "broadly self-inculpatory confession," is to allow only the self-inculpatory statements to be admitted and to exclude the surrounding self-exculpatory statements. *Id.* at 599. See *Commonwealth* v. *Charles*, 428 Mass. 672, 677 (1999) (only the part of the testimony containing declarations against penal interest properly admissible). Here, however, the statement is not broadly self-inculpatory, but rather extremely narrowly so.

In these circumstances, the trial judge was understandably hesitant to allow the narrowly self-inculpatory statements in as declarations against interest. This was a close call and it would have been within his discretion either to declare the statement proposed by defense counsel regarding smoking marijuana and touching the bag of cocaine to be inadmissible in the circumstances because it was not actually a declaration against interest, or to allow it in with some limited "necessary surrounding context" to prevent its significance from being distorted by defense counsel. See *Commonwealth* v. *Marrerro*, 60 Mass. App. Ct. at 229. Nevertheless, the solution proposed by the prosecution, and agreed to by the defendant, to allow the whole statement in evidence was erroneous. *Williamson, supra* at 600. *Commonwealth* v. *Charles*, 428 Mass. at 677.

Regardless, we do not consider the admission in evidence of the entire statement to constitute ineffective assistance of counsel. To establish ineffective assistance of counsel, the defendant must establish that "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and . . . [that incompetency] has likely deprived the defendant of an otherwise available, substantial

ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). "When arguably reasoned tactical or strategic judgments of counsel are called into question, such judgments must be shown to be manifestly unreasonable when made." *Commonwealth* v. *Henley*, 63 Mass. App. Ct. 1, 8 (2005). We cannot say that the trade-off here was manifestly unreasonable, particularly in light of the required finding of not guilty on the marijuana charge. See, e.g., *Commonwealth* v. *Adams*, 374 Mass. 722, 729-730 (1978); *Henley, supra* at 9-10.

As the judge observed, the declarations that Coleman's fingerprints would be found on the bag of marijuana and possibly also on the cocaine supported the defendant's position that the drugs belonged to Coleman and not him. The other statements by Coleman incriminating the defendant could be portrayed as self-serving attempts to shift blame. They also duplicated other evidence. To avoid having witnesses testify to the shooting in which the defendant used the gun found in the safe, the parties entered into a stipulation that the defendant had possessed the gun twelve days prior to its discovery in the safe. That rendered Coleman's statement about the defendant's prior possession of a gun somewhat redundant. Although Coleman's statement that he had heard the defendant was a cocaine dealer is more problematic, Coleman had stated that he had not seen the defendant dealing. More importantly, there was ample evidence of the defendant's drug trafficking, particularly the drug-filled backpack with the defendant's name in it, his fingerprint found on one of the bags of cocaine in the backpack, and notebooks containing documents belonging to the defendant and numeric notations consistent with drug trafficking. Additionally the defendant was arrested with $2,575 on his person.

3. *Delayed disclosure of exculpatory evidence.* The defendant next claims that the Commonwealth's failure to disclose evidence of promises, rewards, and inducements given to Chicklis until two months before trial merits dismissal of the indictments. It was within the motion judge's discretion to deny the defendant's motion to dismiss because the defendant failed to show "irremediable harm to [his] opportunity to obtain a fair trial" or point to any evidence that the delayed disclosure was "egregious, deliberate, and intentional." *Commonwealth* v. *Cronk*, 396 Mass.

194, 198-199 (1985). The Commonwealth disclosed the evidence sufficiently in advance of trial that the defendant was able to cross-examine Chicklis extensively. See *id.* at 200 ("test of timeliness of prosecutorial disclosure is whether the defendant is able to make effective use of the evidence in preparing and presenting [his] case").

We also find no merit to the defendant's claim that the failure to provide him the information prior to his suppression hearing requires dismissal of the indictments. The motion judge relied not only on Chicklis's testimony and her demeanor but on the testimony of the three other witnesses. The testimony consistently established that she freely and voluntarily consented to the search of the apartment. The defendant also could have sought reconsideration of his suppression motion but failed to do so. *Commonwealth* v. *Haskell*, 438 Mass. 790, 792-793 (2003) (within judge's discretion to reconsider denial of defendant's motion to suppress five years after motion was denied). There was no error in denying the defendant's motion to dismiss the indictments.

4. *Remaining claims.* The defendant claims that the trial judge committed prejudicial error by refusing to admit, as past recollection recorded, a police report from one of the officers at the scene identifying the safe as the location in which the cocaine, MDMA, and bag of ammunition were found rather than the Doctor Seuss backpack. The trial judge properly excluded the report from evidence because it was offered without proper foundation. *Commonwealth* v. *Morgan*, 449 Mass. 343, 366 (2007) (requirements for admitting hearsay as a past recollection recorded).[9]

The defendant's claim that he was denied his constitutional right to confront and cross-examine Chicklis is also unavailing.

---

[9]The defendant also claims that his counsel's failure to lay the proper foundation to admit the report constituted ineffective assistance of counsel. The record is insufficient for us to review this claim. We do not know whether defense counsel could have established the requirements for admitting the report as a past recollection recorded. This claim, if there is any basis to it, is more properly the subject of a motion for a new trial. See *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994), quoting from *Gibney* v. *Commonwealth*, 375 Mass. 146, 148 (1978) ("[W]hen the trial record provides an insufficient factual basis for appellate review, the claim of ineffective assistance is 'best left for resolution in the first instance by the trial judge on a motion for new trial' ").

He was given an ample opportunity to cross-examine Chicklis for bias, her involvement in the drug trade, and any rewards and inducements given by the government. The judge was well within his discretionary authority to preclude additional speculative avenues of inquiry regarding how and why Chicklis was able and willing to post bond for Coleman and another alleged drug dealer in unrelated cases.[10]

*Conclusion.* The defendant's convictions are hereby affirmed.

*Judgments affirmed.*

---

[10]Finally, the defendant challenges the denial of his motion to dismiss the grand jury indictments. There is no merit to the arguments he raises in this claim. The presentation to the grand jury satisfied the legal requirements.